OPINION OF THE COURT
John M. Thomas, S.
In this contested trustee’s accounting the trustee brings a motion in midtrial to introduce oral testimony regarding the trust officer’s reliance upon bank examination reports prepared by the New York State Superintendent of Banks and Federal Reserve Bank and also regarding conversations between the employees of the bank and the bank examiners relating to the trust.
Under the last will and testament of John P. Saxton, the income and necessary principal from the residuary estate was left in trust with the Endicott Trust Company, now Manufacturers and Traders Trust Company, for the benefit of the decedent’s spouse Anna E. Saxton for her lifetime, and upon her death the remaining corpus evenly divided between the two daughters, Mary Rita Crittenden and Patricia McDonald. Upon the termination of the life estate on March 12, 1993, when Anna E. Saxton died, the trustee rendered its final account. The remaindermen have filed objections to the account based upon the alleged failure on the part of the trustee to diversify the portfolio of the trust. As part of the trustee’s defense, the bank relies upon a retention agreement signed by beneficiaries of the trust on August 23, 1960 permitting the bank to retain the entire corpus in IBM stock.
In the discovery phase of this proceeding the respondents demanded copies of all bank examiner reports that were conducted by the New York State Superintendent of Banks or the Federal Reserve Bank. The trustee refused to turn over the bank examiner reports claiming it was barred from doing so by both the Superintendent of Banks of New York and the Federal Reserve Board and their respective regulatory powers (see, Banking Law § 36 [10]; 12 CFR 261.13, 261.22).
Specifically the trustee seeks to introduce the testimony of William Nesbitt, the trust officer chiefly responsible for the administration of the Saxton trust, that:
(1) The bank examiners were specifically provided with the entire Saxton trust for their review each time they examined the bank.
*726 (2) No comments or criticisms were ever issued with respect to the management of the Saxton trust or the bank’s retention of 100% IBM stock in that trust.
(3) On several occasions, bank examiners specifically requested and were provided with the 1960 agreement for their review, by both Mr. Nesbitt and Ms. Hamlin.
(4) Mr. Nesbitt had discussions with bank examiners about the 1960 agreement and was assured that the 1960 agreement provided sufficient authority for the bank to continue holding the IBM stock, and relied on that advice from the bank examiners.
In support of the bank’s contention that this secondary evidence should be admissible even though the primary evidence is unavailable, it cites Schozer v William Penn Life Ins. Co. (84 NY2d 639 [1994], mot denied 85 NY2d 890 [1995]). In that case, the Court of Appeals in reversing the Appellate Division and the trial court held in an action to recover life insurance proceeds where an x-ray film was unavailable at trial, that the best evidence rule did not absolutely bar the admission of secondary evidence consisting of an x-ray report recorded by a physician as part of the underwriting process and expert medical testimony concerning the physician’s impression of the x-ray. Another case cited by the bank in support of its position is Dependable Lists v Malek (98 AD2d 679 [1st Dept 1983]). In Dependable, an employer sought to enforce an anticompetition clause alleged to have been contained in an employment contract entered into between the corporate plaintiff and the defendant, its former employee. Special Term granted the defendant’s motion for partial summary judgment based upon the plaintiffs failure to produce a copy of the agreement. The Appellate Division in reversing the trial court held that where a legitimate excuse has been shown for the nonproduction of an original writing, the admissions of the adversary whether oral or written can be received in evidence to prove the existence of the document as well as the contents thereof. Here the defendant had acknowledged that he executed the employment contract and while he did not recall the noncompetitive clause, he did not deny the agreement contained such a provision. Finally, the trustee cites Bolm v Triumph Corp. (71 AD2d 429 [4th Dept 1979]). In that case concerning injuries sustained from an allegedly defective motorcycle, the Appellate Division held that the trial court had committed error in excluding evidence that the motorcycle had been altered after it left possession of the defendant. The evidence proffered was testimony *727 from photographs since the “best evidence”, the motorcycle, was unavailable.
The best evidence rule seeks to protect against fraud, peijury and inaccuracies derived from faulty memory by requiring the production of an original document where its contents are in dispute and sought to be proven. The Court held in Schozer (supra), however, that if the threshold factual findings are established by the trial court that the absence of the document is sufficiently explained and there is preliminarily established to the court’s satisfaction that the secondary evidence is a reliable and accurate portrayal of the original, then the secondary evidence is admissible. The degree of reliability of the secondary evidence goes not to its admissibility but rather to the weight the court will ascribe to it in its decision-making process.
In the first of the two-prong test established by Schozer (supra), the trustee has met its burden that it is sufficiently explained why the original bank examiner reports are unavailable and beyond the control of the trustee to obtain. The petitioner however falls far short in giving a reliable and accurate portrayal that the proffered secondary evidence is an accurate reflection of the bank examiner reports. First, the witness has insufficient recall, but more importantly the witness by law is prohibited from revealing any aspect of the bank examiner reports conducted by the Superintendent of Banks and the Federal Reserve Bank (see, Banking Law § 36 [10]; 12 CFR 261.13, 261.22 [a], [e]; also see, Matter of Clark v Flynn, 9 AD2d 249 [1st Dept 1959]).
It is important to note that in each of the cases cited by the trustee, the secondary evidence admitted involved not only oral testimony but documentation or admissions by opposing party. In Schozer (supra), there was a doctor’s contemporaneous report made at the time that he examined the x-ray. In Dependable (supra), the employee acknowledged that he had read the employment contract and signed the document, and while he disclaimed any recollection of the noncompetitive clause, he did not deny its existence within the bounds of the employment agreement. In Bolm (supra), there were actual photographs of the motorcycle taken before it had been sold for scrap shortly after the accident. In the case now before the court, there are no memorandums of the trust officers Nesbitt or Hamlin that were made contemporaneously with the bank examiner reports which now can be admitted as secondary evidence. There are no photostatic copies, nor can there be admis *728 sions against interest since the respondents have never seen or read the reports, moreover by law the petitioner is prohibited from disclosing the examiner’s reports. It is therefore impossible for the court to evaluate the accuracy of the trust officers’ portrayal of what he or she selectively wish to recall as an interested party.
An authority more in point with the facts of this case is Nields v Lea (191 Misc 970 [Sup Ct, Westchester County 1948], revd 274 App Div 890 [2d Dept 1948]). In the Nields case the plaintiff suing for libel obtained his personnel file from the Navy, then sought to depose a naval official concerning a report in the file. The Government in opposing the deposition contended that the report was confidential and that therefore secondary evidence of its contents may not be received since the admission of such evidence would indirectly accomplish the destruction of prescribed confidence. Although the trial court agreed with the Government’s reasoning, it ruled that the deposition was proper since the Navy through error had voluntarily disclosed the report to the plaintiff. Upon appeal, the Second Department reversed, holding that no part of the report could be received in evidence from any source without governmental permission.
Thusly, the motion now before the court must be denied for not only failing to meet the standards established in Schozer (supra), but also because to admit the testimony of the trust officers relative to bank examiner reports would violate both the State and Federal banking regulations heretofore delineated also and because of the holding in Nields v Lea (supra).
For the same reasons the cross motion is granted to the following extent: that all testimony of William Nesbitt and Linda Hamlin including voir dire relative to bank examiner reports conducted by the New York State Superintendent of Banks or the Federal Reserve Bank is struck from the record.